Richard C. **ALLAIS**

v.

**DONALDSON, LUFKIN & JENRETTE,**
**et al.**

Civ. A. No. H–81–2011.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 17, 1982.

Holtzman & Urquhart, Jack E. Urquhart, Houston, Tex., for plaintiff.

Paschetag, Old & Pinson, A. Ross Rommel, Jr., Houston, Tex., for defendants.

## MEMORANDUM AND ORDER:

STERLING, District Judge.

Pending before the Court are Defendants' motion for partial summary judgment and Plaintiff's motion for leave to file first amended complaint. Defendants do not oppose the filing of the amended complaint, and Plaintiff's motion for leave to file first amended complaint is GRANTED.

Plaintiff brings this action against Defendant Griffith who, while acting in the course of his employment as a stock broker for Defendant Donaldson, Lufkin & Jenrette, a brokerage firm, allegedly made misrepresentations in connection with the purchase of securities by Plaintiff. Plaintiff contends that Defendants violated the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA), Tex.Bus. & Comm. Code Ann., §§ 17.46 and 17.50 (Supp.1982), and the Texas general fraud statute, Tex.Bus. & Comm. Code Ann., § 27.01 (1968). Additionally, Plaintiff alleges that Defendants' conduct constitutes common law fraud. The issue presented by the motion for partial summary judgment is whether the act of advising clients as to the value of purchasing certain securities is a rendering of "services" under the DTPA.

Defendants' motion is denominated as one for partial summary judgment, but the gravamen of Defendants' argument is that the complaint does not allege a cause of action under the DTPA since, on the facts alleged in the complaint, Plaintiff cannot be a "consumer" under the DTPA. Defendants' motion and Plaintiff's response are not supported by affidavits positing a question of fact. Whether the motion is construed as a motion to dismiss for failure to state a claim on which relief can be granted or as a motion for summary judgment, the parties agree that the question presented is a question of law to be determined on the present record. *See Ridco, Inc. v. Sexton*, 623 S.W.2d 792, 795 (Tex.Civ.App.—Ft. Worth 1981, no writ).

The arguments advanced by Defendants in support of their motion construe the complaint too narrowly. Defendants correctly point out that a "consumer" under the DTPA is one who purchases or leases "goods" or "services" and that a sale of securities is not a sale of "goods." *Portland Savings and Loan Association v. Bevill, Bresler & Schulman Government Securities Inc.*, 619 S.W.2d 241, 245 (Tex.Civ.App.—

Corpus Christi 1981, no writ). The Fifth Circuit has held that "we think it reasonable to assume that Texas Supreme Court would find that stock certificates are not covered by the Texas Deceptive Trade Practices—Consumer Protection Act." *Swenson v. Engelstad,* 626 F.2d 421, 428 (5th Cir. 1980). However, in his complaint, Plaintiff claims that a stock broker's advice to clients as to the value of purchasing a security is a rendering of "services" under the DTPA. "Services" are defined as "action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object." *Riverside National Bank v. Lewis,* 603 S.W.2d 169, 174 (Tex.1980), *quoting Van Zandt v. Fort Worth Press,* 359 S.W.2d 893, 895 (Tex. 1962). Plaintiff would thus have the Court distinguish between a deceptive trade practice which is part of the transaction of purchasing a security and a deceptive trade practice which is part of the transaction of a broker advising a client as to the value or desirability of purchasing a security.

There are no Texas cases dispositive of this precise question. In *Portland Savings and Loan Association v. Bevill, Bresler & Schulman Government Securities, Inc., supra,* the plaintiff sued a securities broker for misrepresentation during the sale of securities. In addition to holding that securities are not "goods" under the DTPA, the appellate court considered the plaintiff's argument that the complaint was broad enough to encompass a claim of a misrepresentation in providing "services" under the DTPA. The appellate court found that "[t]here are no allegations regarding 'services' in the language used in the petition. Although 'services' may have been a part of what defendants actually sold, the plain reading of the petition reveals that it only alleges a *claim* for relief from a *sale of securities." Id.* at 245 (emphasis in original). This language is clearly dicta, and on this basis the Court will not conclude that the Texas Supreme Court would hold that a broker's advice as to the value of purchasing a security is a rendering of "services" under the DTPA. In *Riverside National*

*Bank v. Lewis, supra,* the Texas Supreme Court declined to decide whether a misrepresentation concerning the availability of financial counseling in connection with the extension of credit by the bank was a rendering of "services" under the DTPA where this collateral activity was not the subject of the complaint. *Id.* at 175 n. 5. Plaintiff herein has avoided the error made by the plaintiffs in the foregoing cases.

■ Texas courts have no authority to hear certified questions from federal courts, *Duke v. University of Texas at El Paso,* 663 F.2d 522, 525 n. 3 (5th Cir. 1981), and where a Texas court has not decided an issue a federal court nevertheless has a duty to "make an educated guess" as to how the Texas Supreme Court would decide the issue. *Nobs Chemical, U.S.A., Inc. v. Koppers Co., Inc.,* 616 F.2d 212, 214 (5th Cir. 1980), *quoting Benante v. Allstate Insurance Co.,* 477 F.2d 553, 554 (5th Cir. 1973). In the absence of case law, the Court will be guided by state statutes.

■ The Texas legislature directed that the DTPA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, . . . and to provide efficient and economical procedures to secure such protection." Tex.Bus. & Comm. Code Ann., § 17.44 (Supp.1982). Since its enactment in 1973, the DTPA has been a strict liability statute, i.e. if a defendant does one of the acts proscribed in section 17.46 of the DTPA, or does any unconscionable action under section 17.50 of the DTPA, the defendant is liable to a private plaintiff despite the defendant's good faith and even in the absence of privity. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540–41 (Tex.1981); *see generally* Lynn, *Anatomy of a Deceptive Trade Practices Case,* 31 Sw.L.J. 867 (1977). Some of the acts specifically enumerated in section 17.46 do require that the defendant act knowingly or intentionally, but some do not, and there is no such requirement for section 17.50. It appears likely that application of

752

the DTPA to transactions between securities dealers and their clients would result in strict liability for dealers for any misleading information given by them if such information produces damage to any person who uses it, regardless of the knowledge or good faith of the dealers.

■ In construing statutes, Texas courts use the long-recognized principle of statutory construction that statutes in pari materia should be construed together, with the more specific statute prevailing over the more general if such is necessary to achieve consistency and harmony. *See* 53 Tex.Jur.2d Statutes § 186 (1964 and Supp.1981) and cases cited. The Texas legislature has enacted two statutes dealing with misrepresentations in securities transactions. The Texas general fraud statute, Tex.Bus. & Comm. Code Ann., § 27.01 (1968), alleged by Plaintiff, essentially sets out the elements of common law fraud, *Richardson v. Salinas*, 336 F.Supp. 997, 1000 (N.D.Tex. 1972), also alleged by Plaintiff. The Texas Blue Sky Law, Tex.Rev.Civ.Stat.Ann., art. 581–33 (Supp.1982), was amended in 1977 to expand civil liabilities and remedies for misrepresentations made in connection with the purchase or sale of securities. *See generally* Bateman, *Securities Litigation: The 1977 Modernization of Section 33 of the Texas Securities Act*, 15 Hous.L.Rev. 839 (1977–78). The Texas Blue Sky Law expressly provides for the saving of existing remedies. Tex.Rev.Civ.Stat.Ann., art. 581–33(M), *supra*.

■ On the present record, it is clear that Defendant Griffith's advice to Plaintiff as to the value of purchasing certain securities was a statement made in connection with the purchase of a security. Although the advice may have been given to Plaintiff before he expressed any interest in the securities involved, the advice clearly was given as a recommendation to purchase those securities and Plaintiff apparently relied on it. The Texas general fraud statute and the Texas Blue Sky Law are applicable to the transaction wherein Defendant Griffith advised Plaintiff as to the value of purchasing certain securities. The two

foregoing statutes and the DTPA are in pari materia as to misrepresentations in trade or business generally, and the two former statutes are specifically applicable to this securities transaction. The remaining question is whether the DTPA is so inconsistent with the specific statutes that it should not be applied to this transaction, notwithstanding the savings clause in the Texas Blue Sky Law.

One of the major changes brought about by the 1977 amendments to the Texas Blue Sky Law is that some defendants may avoid liability for an untruth or omission by showing that they did not know and could not, by the exercise of reasonable care, have known of the untruth or omission. The Comment to the amendment declares that "a dealer, for example, who makes all reasonable efforts to get complete and accurate information about a company whose security he sells to a customer, is not liable to the customer if there is information the dealer fails to get, or gets in an inaccurate form." Comment, Tex.Rev.Civ.Stat.Ann., art. 581–33 (Supp.1982). The Comment notes that prior Texas law had been interpreted to deny this due diligence defense to a securities dealer. The Court is persuaded that in 1977, some four years after enactment of the DTPA, the Texas legislature gave securities dealers a limited defense to suits based on their untruths or omissions made in connection with the sale or purchase of securities. If a strict liability action under the DTPA can be maintained against securities dealers, the due diligence defense will be emasculated.

In applying the Texas general fraud statute to the actionable fraud of misrepresentations, some Texas cases require proof of scienter by the defendant. *Wood v. Combustion Engineering, Inc.*, 643 F.2d 339, 345 (5th Cir. 1981). Plaintiff may not circumvent this requirement by using the strict liability of the DTPA.

It is, therefore,

ORDERED that Defendants' motion for partial summary judgment is GRANTED.