**E.F. HUTTON & COMPANY, INC., Appellant,**

v.

**John D. YOUNGBLOOD and Wife, Merle Youngblood, Appellees.**

**No. 13–85–302–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 6, 1986.

Rehearing Denied May 1, 1986.

Bruce Goldston, San Antonio, for appellant.

Sam C. Bashara, San Antonio, for appellees.

Before NYE, C.J., and DORSEY and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

This is an appeal from a judgment for damages and penalties in a suit against E.F. Hutton & Co., Inc. by John D. Youngblood and his wife for damages they sustained as a result of incorrect tax and investment advice. The controlling issue presented is whether a brokerage firm may be held liable under the Deceptive Trade Practices Act (DTPA)[1] for erroneous tax and investment advice when it is coupled with other services. We affirm.

John D. Youngblood was employed by Sherwin Williams Company. Sherwin Williams established an approved tax sheltered plan called the "Employees Stock Purchase and Savings Plan;" a pension plan in which Sherwin Williams agreed to match, up to a specified percentage, contributions made by an employee into the Plan. The company's contributions to the Plan are not taxed to the employee when made, only when

withdrawn. The employee's contributions come from his salary, which has already been taxed, so are not taxed when withdrawn. The income earned by contributions to the plan, as well as appreciation in value, is taxed upon withdrawal.

Youngblood had participated in the Plan since 1969 and had approximately $30,000 in his own contributions and $70,000 in employer contributions in the Plan in 1982.

In October 1982, Youngblood contacted Nick Swanson, a broker for E.F. Hutton, about the feasibility of removing the entire $100,000 from the Plan, and investing it in other securities to obtain a higher return. Youngblood had been doing business with Swanson at Hutton since July 1981, investing in and selling other securities. Swanson called E.F. Hutton's New York office and spoke with Karen Badger, a broker in Hutton's E.R.I.S.A. office. Ms. Badger told Swanson that the contemplated withdrawal, coupled with investing the proceeds in E.F. Hutton's Bond and Income Series, would qualify as a tax free rollover, with the result that Youngblood would not incur any tax liability on the transaction. Swanson passed this information on to Youngblood. Accordingly, Youngblood liquidated his Stock Purchase and Savings Plan and received checks from Sherwin Williams totalling $100,780.12. His contributions, which had already been taxed, totalled $30,364.74 and his employer's contributions came to $70,415.38. The sum of $70,415 was invested, pursuant to Swanson's recommendations, in E.F. Hutton's Bond & Income Series, which was essentially a mutual fund composed of bond investments. It was this withdrawal that brought about the tax consequences adverse to Youngblood and that Youngblood had thought he would not suffer by relying on Hutton's advice.

A short time later, Youngblood referred a co-worker to Swanson for liquidation and rollover of his Plan funds. Once again, Swanson called the New York office for advice. This time he learned from the E.R.

---

1. TEX.BUS. & COM.CODE ANN. § 17.42 et seq.   (Vernon Supp.1985).

I.S.A. department head, Gary Strum, that the transaction did not qualify as a rollover, but instead would be taxed. Swanson testified that when he informed Youngblood of the news, Youngblood replied, "That's what the IRS said."

Youngblood subsequently withdrew the money from the Bond and Income Series and reinvested it in Hutton's Cash Reserve Management Account, a money market type of fund. Youngblood was required to pay $31,200 in taxes on the $70,415 improperly withdrawn from the Plan. This suit followed.

Youngblood sued for damages under the theories of common law negligence, both statutory and common law fraud, the Texas Securities Act, the United States Securities Act and the Texas Deceptive Trade Practices Act. He also sought attorney's fees and court costs.

The jury, in its answers to numerous special issues, found: both parties were negligent; E.F. Hutton was 60% negligent and Youngblood was 40% negligent; Youngblood sought to purchase an investment service; the benefits, characteristics or qualities of the service were misrepresented, resulting in damage to Youngblood; an agreement to purchase securities was entered into; the rights or remedies of that agreement were misrepresented and damages resulted to Youngblood thereby; securities were sold by use of untrue statements; Youngblood did not know the rollover would be taxable, but he should have known; Hutton did not misrepresent the tax free status of the rollover in order to induce the purchase; Youngblood did not investigate but did inquire into the tax consequences of the rollover with someone other than Hutton prior to the purchase; the losses due to the liquidation totaled $25,000; and reasonable attorney's fees were $18,000 for preparation and trial, $5,000 for appeal to the Court of Appeals, $2,000 for appeal to the Supreme Court, and $800 for further work if a writ was granted. Judgment was entered in accordance with the verdict, with the exception of a $2,000 increase in damages, reflecting the trial court's award of the mandatory DTPA penalty. See TEX.BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1986).

Appellant raises 25 points of error which attack appellees' right to recover damages or attorney's fees under the various theories espoused by appellee and enumerated above. Appellant's seventh through seventeenth points of error attack the findings which provide the basis for a judgment under the Deceptive Trade Practices Act (DTPA) and are dispositive of this appeal.

The Youngbloods' DTPA claim was predicated upon their status as consumers of appellant's investment counseling services. Appellees alleged that appellant misrepresented the characteristics, benefits and qualities of their services and the rights and remedies of their agreement, in violation of TEX.BUS. & COM. CODE ANN. § 17.46(b)(5), (7), (12) and (19) and § 17.-50(a)(1) and (2) (Vernon Supp.1986).

Appellant's seventh point of error contends that appellees failed to prove they were "consumers" as defined in the DTPA. Appellant's eighth and ninth points of error contend that there is no evidence or insufficient evidence to support the jury's finding that appellees sought to acquire by purchase an investment service from appellant.

To maintain an action under the DTPA, the plaintiff must be a consumer. *Flenniken v. Longview Bank and Trust Co.*, 661 S.W.2d 705, 706 (Tex.1983); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 538 (Tex.1981). In *Cameron*, the Supreme Court said that there are at least two requirements that must be established for a person to qualify as a consumer under the DTPA: (1) that the person must have sought or acquired goods or services by purchase or lease, and (2) that the goods or services purchased or leased must form the basis of the complaint. *See Chastain v. Koonce*, 29 Tex.Sup.Ct.J. 79, 700 S.W.2d 579 (1985).

A consumer is "an individual ... who seeks or acquires by purchase or lease, any goods or services." Goods are "tangible

chattels or property purchased or leased for use." Services "means work, labor, or service purchased or leased for use including services furnished in connection with the sale or repair of goods." TEX.BUS. & COM.CODE ANN. § 17.45(1), (2) and (4) (Vernon Supp.1986).

In *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex.1962) the Supreme Court defined services as "action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object." In a 1980 decision, the Supreme Court interpreted this definition of services, saying: "This definition described 'services' in terms of 'action,' 'conduct,' 'performance' and 'deeds.' All of these synonyms demonstrate that services includes an activity on behalf of one party by another. This characterization indicates that 'services' is similar in nature to work or labor." *Riverside National Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex.1980).

"Services" has been held to include: the services provided by a bank in connection with a checking account, *La Sara Grain v. First National Bank of Mercedes*, 673 S.W.2d 558 (Tex.1984); the sale of insurance, *McCrann v. Klaneckey*, 667 S.W.2d 924 (Tex.App.—Corpus Christi 1984, no writ); the services of an attorney, *Lucas v. Nesbitt*, 653 S.W.2d 883 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); the filing of title papers by a bank for a borrower in conjunction with a loan, *Fortner v. Fannin Bank in Windom*, 634 S.W.2d 74 (Tex.App. —Austin 1982, no writ); and the services of a "loan broker" in attempting to obtain a loan for a borrower. *Lubbock Mortgage & Investment Co., Inc. v. Thomas*, 626 S.W.2d 611 (Tex.App.—El Paso 1981, no writ).

The legislature has directed that the Act "shall be liberally construed to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." TEX. BUS. & COM.CODE ANN. § 17.44 (Vernon Supp.1986), *quoted in Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981).

■ Appellant argues that appellees were not purchasers of goods or services under the DTPA as the activity of the appellant giving rise to the action was the giving of investment advice. As the investment advice was a service neither purchased nor leased, that is, without consideration, appellant argues that it was beyond the coverage of the DTPA.

However, telling the appellants that no taxable consequence would follow if they withdrew their funds from their Stock Purchase Plan and reinvested in Hutton's Bond and Income Series investment was only one part of the transaction. In addition to the erroneous counseling, Hutton then performed a brokerage service by selling to the Youngbloods certain shares in certain investment vehicles, for which services Hutton was to receive a commission. That no commission was ultimately paid or charged is not critical, as the decision not to charge a fee was made after Hutton determined the advice it had earlier given was wrong.

Appellant's branch manager testified that, as a "full-service brokerage house," Hutton received higher commissions than would a "discount brokerage house," because more *services* were provided for their customers. In the transaction sued upon, appellant was to be paid a 4% commission for assisting appellees in obtaining their securities which would accomplish a tax free rollover. The services of tax and investment counseling and assisting in the purchase of securities were inextricably intertwined. *See Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382 (Tex.1982). Appellees sought and received from appellant expert tax and investment counseling as to the taxable consequences of the transaction, without which the sale of securities would not have been made. We find that the appellees were consumers of a service purchased from appellant, E.F.

Hutton. Appellant's seventh, eighth and ninth points of error are overruled.

Appellant's tenth through seventeenth points of error allege that there was no evidence or insufficient evidence that appellant misrepresented the benefits, characteristics or qualities of its investment service or that it misrepresented the rights or remedies of the agreement to purchase securities or that such misrepresentations, if any, were a producing cause of appellees' damages.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

The jury found that appellant had misrepresented the benefits, characteristics or qualities of its service. The evidence supports the jury's finding that appellant represented to appellees that, if they withdrew their funds from Sherwin Williams' Stock Purchase and Savings Plan and purchased E.F. Hutton's Bond and Income Series, appellees would enjoy the benefits of a tax free transaction. This was a benefit which Hutton's Bond and Income Series did not include. Appellant's tenth and eleventh points of error are overruled.

The jury also found that this misrepresentation was a producing cause of appellees' damages. A review of the undisputed facts of the case show that this finding is supported by the evidence. Appellant's sixteenth and seventeenth points of error are overruled.

■ The jury further found that appellant represented to appellee that the agreement to purchase securities conferred rights or remedies which it did not have or which were prohibited by law. Appellant argues in its points of error numbers 12

and 13 that the "right or remedy" provision of the DTPA refers only to a right or remedy which the party doing the misrepresenting was in a position to confer. Therefore, appellant argues, since the right in question was Youngblood's right to transfer his money without incurring tax liability, a right only the government could confer, then § 17.46(b)(12) is inapplicable.

TEX.BUS. & COM.CODE ANN. § 17.-46(b)(12) (Vernon Supp.1986) states that "false, misleading, or deceptive acts or practices" include: "(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

Appellees respond that such a limitation is not supported by statutory construction or authority and that such an interpretation would render the "prohibited by law" phrase meaningless. We agree. We find no authority to support appellant's interpretation.

The general rule is that, when a disputed statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate and the statute will be given its common, ordinary meaning. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814 (Tex. 1983); *Jackson County Hospital District v. Jackson County Citizens for Continued Hospital Care*, 669 S.W.2d 147, 151 (Tex. App.—Corpus Christi 1984, no writ). Courts should not read additional words into a statute in order to reach a predetermined meaning. *Jackson County*, 669 S.W.2d at 152. In order to reach appellant's interpretation, we would have to ignore these basic rules and either add additional words or give the existing words an uncommon meaning.

We find that Section 17.46(b)(12) is applicable to the case at bar and the evidence is sufficient to support the jury's finding that appellant misrepresented the rights or remedies of the agreement. Appellant's points of error twelve and thirteen are overruled.

The jury found, in Special Issue number eight, that this misrepresentation as to the rights or remedies of the agreement was a

producing cause of appellees' damages.[2] A careful review of the evidence makes clear that there is evidence sufficient to support such a finding. Appellant's points of error fourteen and fifteen are overruled.

Appellant's eighteenth and nineteenth points of error attack the admissibility of the evidence on attorney's fees and the sufficiency of the evidence to support the jury's answer on attorney's fees.

Appellant's eighteenth point of error alleges that the trial court abused its discretion in overruling appellant's motion for judgment because Youngblood's witnesses on the issue of attorney's fees should not have been allowed to testify because they were not disclosed in appellees' answers to appellant's interrogatories. Appellant's nineteenth point concludes that, because the expert testimony on attorney's fees should have been excluded, the result would be insufficient evidence on attorney's fees.

The interrogatories propounded by appellant inquired into the existence, identity and expected testimony of any expert witnesses scheduled to be called by appellee. The only expert listed by appellee was David B. Krischke, C.P.A. At trial, Mr. Doyle Coatney, a San Antonio attorney and Mr. Sam Bashara, appellee's attorney, each testified on the issue of reasonable attorney's fees. Prior to their testimony, appellant objected and was overruled. Appellee offered to make Mr. Coatney available for deposition that evening and postpone his testimony until the next day. Both offers were declined by appellant. The trial court allowed both experts to testify as to reasonable attorney's fees.

The rule of procedure governing at the date of trial was TEX.R.CIV.P. 166b(5)(b), which reads as follows:

If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in re-sponse to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.

This rule on disclosure of expert witnesses was formerly contained in Rule 168 until its incorporation into Rule 166b in 1984. Rule 168 had contained a sanction for non-compliance with the disclosure rule: the mandatory exclusion of the undisclosed expert witness' testimony. This sanction was deleted from Rule 166b(5)(b), thus broadening the discretion of the trial court.

The Texas Supreme Court, in a decision based on the 1973 version of Rule 168, which likewise had no mandatory sanction provision, stated:

[A] trial court's refusal to impose a particular sanction can be set aside only upon a showing of a clear abuse of discretion. *Tenngasco Gas Gathering Company v. Fischer,* 624 S.W.2d 301, 303 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). To establish a clear abuse of discretion, the complaining party must show that the trial court's action was arbitrary or unreasonable in light of all the circumstances of the particular case.

*Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439 (Tex.1984).

In *Smithson,* as in the case at bar, the appellant did not request a continuance in order to mitigate any unfair surprise, but instead requested the harshest sanction available: the total exclusion of the expert's testimony. The Supreme Court stated that "the failure to present a motion to continue or to postpone the trial severely undermines the assertion that the trial court abused its discretion [citations omitted]. We hold that under these circum-

---

**2.** Producing cause means "an efficient, exciting or contributing cause" and is sometimes referred to as factual causation. *See Riojas v. Lone Star Gas Co.,* 637 S.W.2d 956, 959 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.); *Rourke v. Garza,* 511 S.W.2d 331, 339 (Tex.Civ. App.—Houston [1st Dist.]), *aff'd,* 530 S.W.2d 794, 801 (Tex.1975).

stances the exclusion of [the expert witness'] testimony was not mandatory. Therefore, the trial court did not abuse its discretion." *Smithson*, 665 S.W.2d at 443.

As earlier noted, the appellant declined appellees' offer to delay Mr. Coatney's testimony on attorney's fees and to make Mr. Coatney available for deposition. The area of attorney's fees, unlike many other areas of expertise, is one about which trial lawyers themselves have a special knowledge. We fail to see how appellant was harmed in his ability to cross-examine the experts in question. Additionally, even if harm were shown, we feel that appellant's failure to accept the offered delay of the testimony "severely undermines the assertion that the trial court abused its discretion" in allowing the testimony. *Smithson*, 665 S.W.2d at 443. Appellant's eighteenth point of error is overruled.

A review of the expert testimony regarding attorney's fees shows that it is sufficient to support the jury's answer to Special Issue number fifteen which awarded $18,000 for preparation and trial of the case, $5,000 for appeal to the Court of Appeals, $2,000 for appeal to the Supreme Court, and $800 for further work if a writ is granted. Appellant's nineteenth point of error is overruled.

Appellant, in point of error 24, complains of the trial court excluding testimony of Mr. Gary Strum, a vice president of Hutton, who is in charge of the E.R.I.S.A. department in New York. The offered testimony was whether he had heard of any complaints by customers about opinions given by the E.R.I.S.A. department other than the complaint by Youngblood. The trial court did not reversibly err in excluding the proffered testimony. *See Employer's Casualty Company v. Peterson*, 609 S.W.2d 579 (Tex.Civ.App.—Dallas 1980, no writ); TEX.R.CIV.P. 434. Appellant's point of error 24 is overruled.

Appellants' points of error numbers 2 and 4 address the applicability of the Federal Securities Act of 1933, 15 U.S.C.A. §§ 77a to 77aa (West 1981); points 3, 5, 20, 21, 22, and 23, the cause of action under the Texas Securities Act. TEX.REV.CIV. STAT.ANN. art. 581-1, et seq. (Vernon 1984); and point 25, the appellee's cause of action in negligence. Because the judgment of the trial court is fully supported by the controlling issues we have addressed, we decline to address appellant's remaining points of error. TEX.R.CIV.P. 451. The judgment of the trial court is AFFIRMED.

## OPINION ON MOTION FOR REHEARING

Only two of appellant E.F. Hutton's fifteen points of error on motion for rehearing merit further discussion. In its twelfth and thirteenth points, appellant complains of this Court's holding that the trial court did not abuse its discretion by admitting evidence of appellees' attorney's fees. The trial court permitted appellees' expert witnesses to testify about the reasonableness and necessity of these fees even though their names were not disclosed in response to appellant's interrogatory requesting the identities of all experts scheduled to be called at trial.[1] Appellant now argues that our decision conflicts with that in *GATX Tank Erection Corp. v. Tesow Petroleum Corp.*, 693 S.W.2d 617 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). The *GATX* Court held that the trial court erred in permitting the plaintiff's attorney, who did not list himself as an expert in response to a relevant interrogatory, to testify about his fees. The court noted that TEX.R. CIV.P. 215(5) requires the exclusion of testimony by unidentified expert witnesses "unless the trial court finds that good cause sufficient to require admission exists." Since the record supplied no evidence of such good cause, the *GATX* Court ruled that the testimony was improperly admitted.

---

1. For a thorough analysis of this identical issue, see our recent opinion in *Modern Exploration, Inc. v. Maddison*, 708 S.W.2d 872 (Tex.App.— Corpus Christi 1986); *cf. H.E.B., Inc. v. Morrow*,

704 S.W.2d 93 (Tex.App.—Corpus Christi 1985, writ pending) (holding that the trial court abused its discretion in refusing to permit a lay witness to testify).

Our decision on original submission is in accord with *GATX.* Unlike that court, however, we found that the trial court's decision to permit the testimony was supported by good cause, for the following reasons:

After testifying about his fees, Sam Bashara, appellees' attorney, called Doyle Coatney, a local attorney, to give his expert opinion of the reasonableness and necessity of Bashara's fees. Appellant objected, citing Rule 166b (quoted in full in our original opinion). Bashara explained that he had only that day decided to call Coatney and that he had informed appellant's attorney that Coatney would be available that evening for deposition. He also referred to the trial court's offer to postpone Coatney's testimony until the next day if appellant's attorney so wished, which he declined. The court then overruled the objection and permitted the testimony. As we did in our original opinion, we again conclude that the trial court did not abuse its discretion in implicitly finding that good cause existed to permit the disputed testimony.

All of appellant's points on motion for rehearing are overruled.