**Mrs. Norris N. FRIZZELL, Appellant,**

v.

**M.E. "Doc" COOK, Harvie D. Lindeman, E.F. Hutton & Company, Inc., and Shearson Lehman Hutton, Inc., Appellees.**

No. 04–89–00376–CV.

Court of Appeals of Texas,
San Antonio.

April 18, 1990.
Rehearing Denied June 1, 1990.

Charles L. Williams, Peter J. Stanton, Williams, Smith, Adams & Stanton, San Antonio, for appellant.

John Clark Long, IV, S. Mark Murray, San Antonio, for appellees.

Before CADENA, C.J., and CHAPA and BISSETT, JJ.

## OPINION

BISSETT, Justice.[1]

This is an appeal by Mrs. Norris N. Frizzell, plaintiff in the trial court, hereafter "appellant," from an order granting appellees', M.E. "Doc" Cook, Harvie D. Lindeman, E.F. Hutton & Company, Inc., and Shearson Lehman Hutton, Inc.'s, motion for partial summary judgment. At issue, in general, is whether the trial court properly rendered partial summary judgment based on appellant's pleading, and, in particular, whether the Texas Securities Act,[2] hereafter the TSA, "preempted" appellant's cause of action under the Deceptive Trade Practices Act,[3] hereafter the DTPA.

Appellant filed her original petition on May 19, 1988, and alleged that appellees, a national brokerage firm and its employees, engaged in tortious conduct in the course

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

2. TEX. REV. CIV. STAT. ANN. art. 581-33 (Vernon Supp. 1990).

of providing her with investment and counseling services relating to the investment of the life insurance proceeds provided by her deceased husband. The unlawful acts of appellees, as alleged in the petition, include alleged violations of (1) the DTPA; (2) TEX. BUS. & COM. CODE § 27.01 (Vernon 1987); (3) 15 U.S.C.A. § 77a (West 1981) (Federal Securities Act of 1933); and (4) the common law duty of good faith and fair dealing.

Appellees alleged in their motions for partial summary judgment:

### I

The pleadings ... establish that thee [sic] is no genuine issue of material fact and that Defendants are entitled to partial summary judgment as a matter of law as to the Plaintiff's claim under the Deceptive Trade Practices Act [sic]— Consumer Protection Act....

### II

The basis for the motion is that the DTPA does not apply to claims of misrepresentation in connection with securities actions such as alleged by the Plaintiff. The Texas Legislature has enacted The Texas Security [sic] Act which specifically affords a cause of action for alleged misrepresentations in connection with securities transactions, and this statute preempts the DTPA in this area.

Appellant, in her response to appellees' motion for summary judgment, among other statements, stated:

As is obvious from reading of Plaintiff's Original Petition, Plaintiff's allegations of wrongs covered under the Deceptive Trade Practices Act are not limited to misrepresentations related only to specific purchases or sales of securities, as described in Art. 581-33.... Plaintiff has complained not just about such mis-

3. TEX. BUS. & COM. CODE ANN. §§ 17.41-.63 (Vernon 1987).

representations but about "churning" of her account and unauthorized purchases and sales, as well as an unconscionable failure of Defendants to take action after Plaintiff complained of the individual Defendants' unauthorized and wrongful conduct ... that Defendants intentionally did not provide the services advertised....

The trial court, in granting the partial summary judgment to appellees, decreed that "Plaintiff should take nothing by her cause of action under the Texas Deceptive Trade Practices Act." Thereafter, the trial court severed appellant's claims under the DTPA from her remaining claims, including claims under the TSA. The severed DTPA claims were assigned a separate number (88–CI–08905–A), and the partial summary judgment then became a final judgment, which appellant has appealed.

Appellant claims in her first point of error that "[t]he Trial Court erred in granting partial summary judgment against Appellant because the Texas Securities Act does not 'preempt' an action under the Texas Deceptive Trade Practices—Consumer Protection Act as a matter of law." We sustain the point, which makes it unnecessary for us to consider appellant's remaining points of error.

In the instant case, the trial court found, in its judgment, that the cause of action pleaded by appellant was, in effect, inconsistent and inapposite to the TSA. It was this finding that caused the trial court to render judgment that appellant did not have a cause of action under the DTPA.

Appellees contend that the judgment of the trial court was mandated by the holding of the Texas Supreme Court in *E.F. Hutton & Co. v. Youngblood*, 30 Tex.Sup. Ct.J. 508 (June 24, 1987), *withdrawn*, 741 S.W.2d 363 (Tex.1987) (the withdrawn opinion), and is fully supported by the holding in *Allais v. Donaldson, Lufkin & Jenrette*, 532 F.Supp. 749 (S.D.Tex.1982).

It is well settled under Texas law that an unpublished opinion of an appellate court is of no precedential value. *Berry v. Berry*, 647 S.W.2d 945, 947 (Tex.1983); *Merrill Lynch, Pierce, Fenner & Smith,*

*Inc. v. McCollum*, 666 S.W.2d 604, 610 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied*, 469 U.S. 1127, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985); *see* TEX.R.APP.P. 90(i). We apply that rule to the case at bar and hold that the withdrawn opinion of the Supreme Court in *Youngblood* has "no precedential value." The effect of the withdrawn opinion is to leave intact the holding of the Corpus Christi Court of Appeals in all matters relevant to the DTPA action before the court of appeals. *See E.F. Hutton & Co. v. Youngblood*, 708 S.W.2d 865 (Tex.App.—Corpus Christi 1986), *modified*, 741 S.W.2d 363 (Tex.1987) (judgment of court of appeals modified "so as to disallow recovery of attorney's fees by the Youngbloods. As modified, the judgment of the court of appeals is affirmed." *Id.* at 364). We do not consider the withdrawn opinion in disposing of the appeal in the case at bar.

Hutton argued before the Corpus Christi Court of Appeals that Youngblood was not a consumer because "[a]s the investment advice was a service neither purchased or leased, that is, without consideration ... it was beyond the coverage of the DTPA." *E.F. Hutton & Co. v. Youngblood*, 708 S.W.2d at 868. The court of appeals rejected that argument noting:

> Appellant's branch manager testified that, as a 'full-service brokerage house,' Hutton received higher commissions than would a 'discount brokerage house,' because more *services* were provided for their customers. In the transaction sued upon, appellant was to be paid a 4% commission for assisting appellees in obtaining their securities which would accomplish a tax free rollover. The services of tax and investment counseling and assisting in the purchase of securities were inextricably intertwined. *See Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382 (Tex.1982). Appellees sought and received from appellant expert tax and investment counseling as to the taxable consequences of the transaction, without which the sale of securities would not have been made. We find that the appellees were consum-

ers of a service purchased from appellant, E.F. Hutton.

*Id.* at 868–69.

For summary judgment purposes, appellant, in her original petition, alleged (among other allegations) that she conclusively establishes that appellant sought appellees' investment and counseling services.

The withdrawn opinion, even if it were to be considered in this appeal, does not address the cumulative provisions of the DTPA or the savings provisions of the TSA. Section 17.43 of the DTPA, prior to its being amended in 1979, read:

### Sec. 17.43. Cumulative Remedies

The provisions of this subchapter are not exclusive. The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law. The provisions of this subchapter do not in any way preclude other political subdivisions of this state from dealing with deceptive trade practices.

Texas Deceptive Trade Practices—Consumer Protection Act, ch. 143, § 1, 1973 Tex. Gen. Laws 322, 322, *amended by* Texas Deceptive Trade Practices—Consumer Protection Act, ch. 603, § 1, 1979 Tex.Gen. Laws 1327, 1327. Section 17.43 was amended and reenacted in 1979 to read as follows:

### Sec. 17.43. Cumulative Remedies

The provisions of this subchapter are not exclusive. The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law; provided, however, that no recovery shall be permitted under both this subchapter and another law of both actual damages and penalties for the same act or practice. A violation of a provision of law other than this subchapter is not in and of itself a violation of this subchapter. *An act or practice that is a violation of a provision of law other than this subchapter may be made the basis of an action under this subchapter if the act or practice is proscribed by a provision of this subchapter or is declared by such other law to be actionable under this subchapter.* The provisions of this subchapter do not in any way preclude other political subdivisions of this state from dealing with deceptive trade practices.

TEX. BUS. & COM. CODE ANN. § 17.43 (Vernon 1987) (emphasis added).

■ The effects of the amendment were to keep a violation of the DTPA from automatically resulting from the violation of another law and to preclude double recovery under the DTPA and another statute for the same act or practice. That the Legislature felt these changes were necessary provides evidence that it knew and approved of the DTPA and that it was not displaced by other statutes covering the same conduct.

The predecessor statute to the DTPA, originally passed in 1967, contained specific language that would have exempted securities transactions. Article 5069–10.03 provided:

### Art. 10.03. Exemptions

Nothing in this Chapter shall apply to actions or transactions permitted under laws administered by a public official acting under statutory authority of this State or the United States.

Interest–Consumer Credit–Consumer Protection Act, ch. 274, § 2, 1967 Tex.Gen. Laws 608, 658, *repealed by* Deceptive Trade Practices–Consumer Protection Act, ch. 143, § 3, 1973 Tex.Gen. Laws 322, 342. The State Securities Board had been established in 1957 to administer laws relating to securities, thus making securities transactions exempt under the above 1967 enactment. *See* Securities Act, ch. 269, § 2, 1957 Tex.Gen. Laws 575, 576. When the DTPA was passed in 1973, *this exemption was repealed.* Deceptive Trade Practices–Consumer Protection Act, ch. 143, § 3, 1973 Tex.Gen. Laws 322, 342. The DTPA no longer contains any exemption for securities transactions. The only exemptions intended by the Legislature are those delineated in section 17.49, which *do not* exempt securities transactions.

Similar to the DTPA's cumulative provisions, article 581–33(M) of the TSA provides:

Saving of Existing Remedies. The rights and remedies provided by this Act are in addition to any other rights (including exemplary or punitive damages) or remedies that may exist at law or in equity.

 There is no fundamental inconsistency between the TSA with its due diligence defense in article 581–33 A(2), and the DTPA with its defenses in section 17.-506. The TSA defense, in part, provides:

However, a person is not liable if he sustains the burden of proof that either (a) the buyer knew of the untruth or omission or (b) he (the offeror or seller) did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

TEX.REV.CIV.STAT.ANN. art. 581–33 A(2) (Vernon Supp. 1990).

 The defense in part (a) of article 581–33 A(2) subsumed within the DTPA requirement in section 17.50(a) is that a deceptive practice constitutes a "producing cause" of actual damages. If a buyer knows of the untruth or omission, it cannot be a producing cause of damages. Thus, there would be no recovery under either statute. The defense in part (b) is almost identical to DTPA section 17.506(a)(2), which gives a complete defense to a defendant who gives a consumer notice of his reliance on:

written information relating to the particular goods or services in question obtained from another source if the information was false or inaccurate and the defendant did not know and could not reasonably have known of the falsity or inaccuracy of the information. . . .

TEX.BUS. & COM. CODE ANN. § 17.506(a)(2) (Vernon 1987). Similarly, a defendant cannot be liable under the DTPA for failing to disclose information the seller did not know. TEX. BUS. & COM. CODE ANN. § 17.46(b)(23) (Vernon 1987); *Robinson v. Preston Chrysler–Plymouth, Inc.,* 633 S.W.2d 500, 502 (Tex.1982).

 The provisions of the DTPA and the TSA are entirely consistent. However, if there is a conflict, the DTPA controls. The courts must make every effort to har-monize inconsistent provisions, if any, in the statutes. *Gordon v. Lake,* 163 Tex. 392, 356 S.W.2d 138, 139 (1962); *Wintermann v. McDonald,* 129 Tex. 275, 102 S.W.2d 167, 171 (1937); *Cole v. State,* 106 Tex. 472, 170 S.W. 1036, 1037 (1914).

TEX. GOV'T CODE ANN. § 311.025(a) (Vernon 1988) provides:

Except as provided by Section 311.-031(d), if statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails.

The provision of the TSA at issue in the instant case was enacted in 1977. Article 581–33 A(2) was then amended, effective May 25, 1979, but the changes did not affect the "due diligence" defense provided by article 581–33 A(2) of the TSA.

After these changes to the TSA, the DTPA was substantially amended in 1979 (as above stated) to include, *inter alia,* the language in section 17.43 expressly stating that a violation of another statute (like the TSA) may also be a violation of the DTPA. The Legislature also reenacted the affirmative relief provisions of section 17.50, which give rise to the claim *sub judice* in this case. These amendments became effective August 27, 1979, which was after the effective date of the TSA amendments. Consequently, the later enacted DTPA provisions control.

Moreover, the general rule of statutory construction that special laws prevail over general laws in cases of conflict has been modified by the Legislature. TEX. GOV'T CODE ANN. § 311.026 (Vernon 1988) provides:

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, *unless the general provision is the later enactment and the manifest intent is that the general provision prevail.* (Emphasis added.)

Since the Legislature is never presumed to have done a useless act, *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981), the Legislature is presumed to have intended, by making both the TSA and DTPA cumulative of each other and by amending section 17.43 of the DTPA after the enactment of article 581–33 A(2) (the "due diligence defense" of the TSA), it is apparent that actions could be brought under both acts. However, a double recovery for the same act is precluded. There is nothing in either the TSA nor the DTPA that expressly exempts securities transactions from the scope of the DTPA. The "exemption" that appellees rely on, therefore, is an implied exemption, and the Texas Supreme Court has refused to imply exemptions or exceptions not mandated by the Legislature. *See Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex.1985) (refusing to imply intent requirement for unconscionability); *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985) (refusing to imply reliance requirement for misrepresentation); *Smith v. Baldwin*, 611 S.W.2d 611, 616–17 (Tex. 1980) (refusing to imply an intent requirement).

The Supreme Court of Texas, in *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex.1987), stated:

> The legislative history of the DTPA indicates that the Act was intended to apply to all service providers.

In the case presented by this appeal, appellant, among other allegations contained in her petition, alleged that she contracted to "acquire" the "services" of defendants (appellees).

This Court has previously held that both the DTPA and TSA apply to securities transactions. In *Vick v. George*, 671 S.W.2d 541 (Tex.App.—San Antonio 1983), *rev'd on other grounds*, 686 S.W.2d 99 (Tex. 1984), it was stated:

> The suit arose from the sale of interests in an oil and gas venture and proceeded under common law theories of fraud and rescission, the Texas Securities Act (T.S. A.), TEX.REV.CIV.STAT.ANN. arts. 581–1—581–39 (Vernon Supp. 1982–1983), the Deceptive Trade Practices–

Consumer Protection Act (D.T.P.A.), and the Federal Securities Act of 1933, 15 U.S.C. § 77a–77bbbb (1983).

*Id.* at 544 (footnote omitted).

The appellant in *Vick* argued that recovery could not be had under both the TSA and the DTPA. This Court agreed, noting that while *double recovery* was precluded by the 1979 amendments to the DTPA the appellees had the right to elect whether damages would be imposed under the DTPA or the TSA based on the jury's findings. The Court held:

> Plaintiffs correctly state that recovery under either the T.S.A. or the D.T.P.A. is not exclusive of any other rights or remedies that may exist. Article 581–33(A), and § 17.43 (amended 1979). It is axiomatic, however, that an aggrieved party is entitled to but one recovery for the same loss. *American Transfer and Storage Co. v. Brown*, 584 S.W.2d 284, 293 (Tex.Civ.App.—Dallas 1979), *rev'd on other grounds*, 601 S.W.2d 931 (Tex. 1980), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474.

*Id.* at 551.

The only other case relied on by appellees is *Allais v. Donaldson, Lufkin & Jenrette*, 532 F.Supp. 749 (S.D.Tex.1982). In that case, the Court expressly states "[t]he issue presented by the motion for partial summary judgment is whether the act of advising clients as to the value of purchasing certain securities is a rendering of 'services' under the DTPA." *Id.* at 750. No mention is made in *Allais* of the "cumulative clause" in the DTPA or the "savings clause" of the TSA. Also, no mention is made in *Allais* of section 17.506(a)(2) of the DTPA—which provides a defense to a DTPA action if the defendant relies on information obtained from another source which he does not know to be incorrect, or of the fact that a defendant cannot be liable under the DTPA for failing to disclose information the seller did not know. *See Robinson v. Preston Chrysler–Plymouth, Inc.*, 633 S.W.2d at 502. We do not consider *Allais* to be controlling in this case.

In *Nottingham v. General American Communications Corp.*, 811 F.2d 873 (5th Cir.1987), *cert. denied*, 484 U.S. 854, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987), the defendant argued that it was error for the district court to submit claims under both the DTPA and securities statutes. The court held: "It was not error to submit both claims to the jury," and further stated:

> As we recently explained in *Federal Deposit Insurance Corporation v. Munn*, 804 F.2d 860, 865 (5th Cir.1986), *services related to the sale of a security may be services covered by the DTPA when they also are objectives of the transaction.* The contract for legal services, the Production Facilities Agreement, and the Distribution Agreement, among others, were plainly for services that were objectives of the transaction in this case.

*Id.* at 878 (emphasis added).

 The holding in *Nottingham* parallels the decision by this Court in *Vick*, and the holding by the Corpus Christi Court of Appeals in *Youngblood*. We hold that appellant was a consumer under the DTPA and the trial court erred in granting partial summary judgment that plaintiff (appellant) take nothing by her cause of action under the Texas Deceptive Trade Practices Act. Since both the TSA and the DTPA have cumulative remedies provisions, in our opinion the Legislature intended neither Act to "preempt" or replace the other. Therefore, we hold that the TSA does not "preempt" a cause of action under the DTPA as a matter of law, as contended by appellees. Appellant's first point of error is sustained.

The judgment of the trial court is reversed and the cause is remanded to the trial court for a trial on the merits.