**Affirmed and Memorandum Opinion filed March 19, 2013.**



In the

# Fourteenth Court of Appeals

## NO. 14-11-00594-CR

## JACK M. MANISCALCO, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 434th Judicial District Court
Fort Bend County, Texas
Trial Court Cause No. 11-DCR-056387**

# M E M O R A N D U M   O P I N I O N

Appellant Jack Maniscalco, Jr., was convicted of the offense of interference with an emergency phone call, a felony offense due to a prior conviction for interference with an emergency phone call. On appeal, appellant challenges the legal sufficiency of the evidence to support his conviction, arguing that (1) any emergency call was completed prior to any interference by appellant and (2) there was no underlying "emergency" on which to base the conviction. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was indicted for felony interference with an emergency phone call, alleged to have been committed on May 7, 2010, with a prior conviction for interference with an emergency phone call.

At trial, complainant Charlie Butler, assistant principal for First Colony Middle School, testified that on May 7, 2010, he observed students leaving the school in a direction they ordinarily do not take to get home. Butler indicated some of these students previously had been involved in "slap-boxing," a form of fighting that can become "pretty violent," at school. Butler got into his car and drove toward where he thought the students were heading. Butler testified that he received a radio, i.e., walkie-talkie, call from Fort Bend Independent School District Officer Lora Gast, who indicated the students were going to one of the nearby baseball fields. When Butler arrived at the baseball field, the students scattered and he saw an adult—appellant—standing there. As Butler approached appellant, appellant stated that he was "supervising the fight" and that he had been a coach for some of the students involved. Appellant asked Butler who he was, and Butler identified himself as one of the middle school principals. Butler informed appellant that he should not let the students fight; appellant responded, "Oh, if you let them fight here, you don't have to worry about them bringing guns to school."

Butler testified that he believed that appellant was "basically sponsoring a fight," and he began to walk away in the direction of where the students scattered so he could attempt to talk to them. Appellant began following Butler, taunting him with racial slurs. When appellant was about three to four feet away from Butler, Butler called into Officer Gast on the radio and advised that there was an adult male who was insulting and threatening Butler. Appellant then approached

Butler until they were about a foot apart, "got in [his] face," yelling obscenities and smelling of alcohol, and asked Butler, "What you want to do, what you want to do[?]" Butler testified that he thought appellant wanted to fight him and was "egging [him] on," and that appellant "was going to grab [him]" and "hit [him]." As Butler stepped back, he received another call from Officer Gast, who told him that the Sugar Land Police Department (SLPD) was en route. Appellant then said, "[O]h, you need your cop friends to come and help you," grabbed the radio out of Butler's hand, and slung the radio at least five to six feet away. Butler testified that as appellant was throwing the radio, Butler had just heard Officer Gast ask for Butler's exact location. As Butler retrieved his radio "to keep in communication with" Officer Gast, appellant started walking away quickly. Appellant tossed his keys to a student, later identified as appellant's son. At this time, an SLPD truck appeared on the scene but was unable to pursue appellant because the truck got stuck in a ditch. Butler followed appellant at a distance, "far enough for him not to turn around and punch [Butler]," because he wanted police to apprehend appellant. Appellant then jogged into the neighborhood. Butler went back toward his car and met up with Officer Gast, who was still in communication with SLPD. After SLPD apprehended appellant, Butler identified appellant.

Officer Gast testified that on May 7, she was notified by dispatch that there was a fight near the baseball fields. By radio, Officer Gast informed school administrators, including Butler, that she was leaving campus to check on a possible fight on the baseball fields. Butler then called back to her on the radio that he already was there at the scene and he needed help because there was an adult who was threatening him. Officer Gast then responded to Butler that she and SLPD were en route, and asked Butler for his exact location. Officer Gast became concerned because Butler did not respond to her question, so she called him two or

3

three more times. When Officer Gast arrived at the scene, appellant was gone. After checking the area, Officer Gast returned to campus; once SLPD apprehended appellant, Officer Gast took Butler to identify appellant.

Appellant testified that he was on a walk in his neighborhood on May 7 when he received a call from his son that he was at a fight at the back of the baseball field. Appellant admitted that he had two beers before his walk. Appellant walked over to the field to pick up his son. After appellant arrived at the field, Butler drove up, and all the kids scattered. After Butler approached, appellant testified that he identified himself and told Butler that two kids were fighting, and that Butler accused him of setting up the fight. Appellant testified that he started walking off because he did not want to get involved. Appellant denied supervising any fight, using racial slurs or obscenities, and ever touching the radio. Appellant testified that Butler dropped the radio after Butler "got pretty close to" appellant and "threw his hand up, with the radio"; when appellant flinched, their arms hit. Appellant denied hearing that police were en route due to his diminished hearing. According to appellant, after Butler picked up the radio, he continued accusing appellant of setting up the fight. Appellant walked back into the neighborhood, where police stopped him, handcuffed him, and told him he was being arrested for public intoxication.

The jury found appellant guilty of the charged offense and assessed his punishment at six months' confinement and a fine of $5000.

## II. STANDARD OF REVIEW

In reviewing legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. State*, 287 S.W.3d 346, 350 (Tex. App.—Houston [14th Dist.] 2009, no

pet.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)). We do not sit as a thirteenth juror and may not reevaluate the weight and credibility of the record evidence or substitute our judgment for that of the fact finder. *Id.* (citing *Dewberry*, 4 S.W.3d at 740). "Reconciliation of conflicts in the evidence is within the exclusive province of the fact finder." *Id.*

### III. ANALYSIS

An individual commits an offense if he knowingly prevents or interferes with another individual's ability to place an emergency telephone call or to request assistance in an emergency from a law enforcement agency. TEX. PENAL CODE ANN. § 42.062(a) (West 2012). The statutory definition of "emergency" means a condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault. *Id.* § 42.062(d).

### A. Whether the emergency call was completed before appellant "interfered"

Appellant first argues there was not legally sufficient evidence to convict him of the offense because, based on "common sense," once Butler's call to police was completed, there could be no prevention or interference with that emergency call. Appellant contends that at the time when appellant allegedly grabbed Butler's radio, Butler already had communicated all necessary information to police—that is, police were aware of Butler's location and had a description of the situation.

Here, Butler testified that after appellant started following him and hurling racial slurs, Butler called Officer Gast on his radio and informed her that an adult male was insulting and threatening him. Butler testified that appellant then "got in [his] face" and asked him what he wanted to do. According to both Butler and

Officer Gast, Butler received a call back from Officer Gast that she and the SLPD were en route. Butler testified that, just prior to grabbing and throwing his radio, appellant taunted Butler that he needed his "cop friends to come and help" him. Butler testified that as appellant was grabbing and throwing the radio, Butler had just heard Officer Gast requesting his exact location. Butler testified he was "positive [where—where are you?] was said on the radio" and that Officer Gast "didn't know where, in the park [he] was." Butler also testified that he was not "able to make [sic] exact location with" Officer Gast "[b]ecause [appellant] had thrown [Butler's] radio to the ground at that particular time." Officer Gast confirmed that after she told Butler that she and SLPD were en route, she asked him for his exact location. Officer Gast never received an exact location from Butler, and this concerned her enough that she called him back two or three times in an attempt to ascertain his location. Officer Gast requested Butler's exact location "because there's [sic] a couple of different baseball diamonds out there" and there is back access to the fields. Appellant admitted Butler called someone on the radio after appellant identified himself to Butler but claimed not to know that it was the police because Butler never said who he was talking to and because appellant is hard of hearing.

Both Butler's and Officer Gast's testimony supports a jury finding that appellant's actions prevented or interfered with Butler's ability to provide additional important information to police, namely, his precise location in an area consisting of more than one baseball field, with more than one access point. Viewed in the light most favorable to the verdict, the evidence shows that the jury was rationally justified in finding beyond a reasonable doubt that appellant knowingly prevented or interfered with Butler's ability to place an emergency call or request assistance in an emergency from a law enforcement agency when he

6

grabbed the radio from Butler's hand and slung it several feet away from Butler in the course of Butler's radio communications with Officer Gast. Therefore, we overrule appellant's first issue.

### B. Whether Butler feared or is reasonably believed to have feared imminent assault to constitute an "emergency"

Appellant's second legal sufficiency challenge focuses on whether Butler was even making an "emergency" radio call. Appellant argues that there is insufficient evidence that Butler was in fear of imminent assault as defined by section 42.062(d) because the testimony shows that Butler could have walked away but instead confronted and then followed appellant, and that both Butler and appellant were upset and in each other's faces.

Appellant relies on *Matlock v. State*, where the Tyler Court of Appeals considered whether there was legally sufficient evidence that an interrupted call to 9-1-1 constituted an emergency call for purposes of section 42.062(d). No. 12-05-00413-CR, 2006 WL 2106951, at *2 (Tex. App.—Tyler July 31, 2006, no pet.) (mem. op., not designated for publication). This case is unpublished and, as such, is not precedent and has no precedential value. *See* TEX. R. APP. P. 47.7 & 2008 cmt.; *Scillitani v. State*, 343 S.W.3d 914, 919 n.3 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (noting that an opinion not designated for publication "does not have any precedential value"); *see also State Farm Lloyds v. Borum*, 53 S.W.3d 877, 889 & n.7 (Tex. App.—Dallas 2001, pet. denied) (refusing to consider unpublished opinion because such opinions have no precedential value and are not authority); *Frizzel v. Cook*, 790 S.W.2d 41, 43 (Tex. App.—San Antonio 1990, writ denied) (equating an opinion withdrawn by the issuing court with an unpublished opinion and stating that both withdrawn and unpublished opinions have no precedential value and should not be considered by appellate

courts). But, even if it had precedential value and could be considered as persuasive authority, we would not find it to be on point.

The *Matlock* court sustained the appellant husband's sufficiency challenge because there was no record evidence that the complainant wife was afraid of the appellant, no proof of facts or circumstances from which one could infer that she reasonably feared he would assault her, and no evidence that the appellant had threatened her. *Id.* at *2–3.

Here, unlike in *Matlock*, there is sufficient evidence for the jury to reasonably find that Butler was in fear of or is reasonably believed to be in fear of imminent assault from appellant at the time Butler was engaged in calling police. Butler testified that after arriving at the baseball field, he asked appellant what was going on and appellant informed Butler he was "supervising" the students fighting. When Butler started walking away to talk to the students, appellant followed Butler and taunted him "several times" with racial slurs. At this point, when appellant was about three to four feet away, Butler testified he called Officer Gast on the radio about an adult male who was "insulting" and "threatening" him. Officer Gast testified that she could tell that "something had happened" from Butler's tone of voice when he called in for help on the radio. Butler testified that appellant kept following him to within a foot's distance, "within striking distance"—close enough that Butler could smell alcohol on appellant's breath—yelling profanity and "egging" Butler on by asking him "what you want to do, what you want to do." Butler thought appellant "wanted to fight" and "was going to grab [him], hit [him]," so he stepped back. As Butler did so, Officer Gast called in on the radio that she and SLPD were en route. According to Butler, appellant then said, "[O]h, you need your cop friends to come and help you," grabbed the radio out of Butler's hand, and threw the radio at least five to six feet away. At that time, Butler

8

testified, he had just heard Officer Gast requesting his exact location. Butler retrieved his radio and appellant started to walk away. Butler saw that the police truck was unable to pursue appellant and so he followed him "from a distance," "far enough for [appellant] not to turn around and punch" Butler. Butler testified that "[o]f course . . . [he] was afraid, [he] didn't know what [appellant] was going to do." Butler testified that appellant never prevented him from leaving. Butler also testified that his job is to protect his students' safety and he "knew [appellant] was drunk, knew he had been out there with the kids," which is why he wanted police to apprehend appellant. Appellant admitted to having drunk two beers beforehand, but denied using any racial slurs or profanity with Butler. Appellant testified it was Butler who approached appellant "actually aggravated" and "hollered" at appellant, "got pretty close" to appellant and threw his hands up, which is when appellant flinched, their arms hit, and Butler dropped the radio. Appellant testified that Butler then followed appellant "like a little Chihuahua" when he tried to walk away.

We must presume that the jury resolved any conflicting inferences in favor of the verdict, and must defer to that resolution. *Jackson*, 287 S.W.3d at 350 (citing *Jackson*, 443 U.S. at 326). Thus, a rational jury could conclude Butler's testimony was credible and established that Butler feared or was reasonably believed to be in fear of an imminent assault at the time he placed the radio call to Officer Gast—when appellant was insulting Butler using racial slurs and threatening him—and that this fear of imminent assault continued at least until the time that appellant grabbed and threw Butler's radio away—when appellant was screaming profanity "within inches" of Butler, taunting Butler about needing his "cop friends to come and help" him, and "egging" him on, and Butler thought appellant was going to "grab" and "hit" him. A rational jury also could conclude

9

that Officer Gast's testimony about Butler's tone of voice when he called her for help because there was an "adult out there threatening" him corroborated that Butler was "nervous" and involved in a tense situation with appellant. *See id.* at 351–52 (concluding evidence was legally sufficient to support existence of an emergency where complainant testified she thought appellant would hurt her, that appellant demonstrated "rage," and that appellant said, "[B]itch, you going to call the cops, I'm going to give you something to call the cops for," and officer testified complainant told him that appellant assaulted her and slapped the phone away from her as she tried to call 9-1-1, and complainant was crying when officer arrived at scene).

While Butler admits to following appellant, this took place after appellant grabbed and threw the radio and appellant started to quickly walk away; Butler testified that despite being "afraid," he wanted police to apprehend appellant, Butler's priority was the students' safety, and he did not know whether appellant would try to "fight" the students. Moreover, Butler's behavior after appellant started to leave the scene—by following him at a distance safe enough to avoid any physical contact—is not inconsistent with Butler's having been in fear or reasonably believed to be in fear at the time when Butler was engaged in, and appellant prevented or interfered with, the radio call with police. Finally, appellant's contention that both men were upset does not diminish the probative value of Butler's testimony that he thought appellant would "grab" or "hit" him in showing Butler's fear. *See Caballero v. State*, 919 S.W.2d 919, 921 (Tex. App.— Houston [14th Dist.] 1996, pet. ref'd) (concluding that complainant's fear may be established by circumstantial evidence such as what complainant was thinking at time of offense). Viewed in the light most favorable to the verdict, the evidence shows that the jury was rationally justified in finding beyond a reasonable doubt

10

that Butler was in fear or reasonably believed to be in fear of imminent assault from appellant, which constitutes an "emergency" for purposes of section 42.062(d). Therefore, we overrule appellant's second issue.

## IV. CONCLUSION

Accordingly, we affirm the trial court's judgment.


/s/           Tracy Christopher
Justice


Panel consists of Justices Frost, Christopher, and Jamison.

Do Not Publish — TEX. R. APP. P. 47.2(b).