### FORT WORTH MORTGAGE CORPORATION, Appellant,

v.

### Donald G. ABERCROMBIE and Carol Abercrombie, Appellees.

### No. A14–91–01396–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 30, 1992.

Eugene J. Pitman, Houston, for appellant.

Paul F. Waldner, Mark R. Read, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

OPINION

J. CURTISS BROWN, Chief Justice.

Homeowners filed suit alleging their mortgage company unilaterally cancelled their mortgage protection policy and, without notice, substituted a policy with significantly less benefits. Finding that the mortgage company's conduct was unconscionable, committed knowingly, and false, misleading and/or deceptive, the jury awarded actual damages of $70,275, additional damages of $100,000, and attorney's fees amounting to one-third of the total award. In eight points of error, the mortgage company contends the homeowners' claims are time-barred, and it challenges the sufficiency of the evidence to support the jury's answers regarding damages and liability. We affirm.

Donald and Carol Abercrombie, appellees, paid appellant, Fort Worth Mortgage Corporation, a monthly premium for a mortgage protection policy issued by Life Investors Insurance Company of America. Unknown to appellees, the president of the mortgage company, James Dubose, collected, as his commission, 25 percent of the monthly premium. The policy provided that, in the event of disability, appellees' house payments would be paid for up to 300 months. However, when Mr. Abercrombie became permanently disabled in 1986 as the result of an injury on his job as a sheet metal worker, the insurance covered his monthly house payment for one year only. When appellees received a letter informing them that the twelfth payment was the final one, they discovered that appellant had canceled the policy in 1979, substituting a policy with less benefits issued by Mortgage Bankers Life Insurance Company. Appellees also discovered that Dubose was chairman of the board of Mortgage Bankers, therefore their monthly premiums had been diverted to Dubose's own company.

First, appellant contends that appellees had knowledge putting them on notice of the substitution as early as November 1979, therefore their claim, filed in 1988, is barred by the two-year statute of limitations. TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1987). The statute, however, expressly extends the time for bringing suit to "within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." *Id.* Likewise, the Insurance Code allows a party to file a suit involving an insurance claim "within two years after the person bringing the action discovered or, in the exercise of reasonable diligence, should have discovered the occurrence of the ... unfair or deceptive act or practice." TEX.INS.CODE ANN. art. 21.21 § 16(d) (Vernon 1981 & Supp.1992). On the second day of trial, appellant filed a trial amendment pleading statute of limitations. In response, appellees verbally obtained leave to file a trial amendment, in which they pleaded, "At all times material hereto, Plaintiffs Donald and Carol Abercrombie exercised reasonable diligence to discover the conduct of the Defendants complained of herein." Appellant contends that appellees' written pleading did not support submission of a question concerning discovery because it did not state the date on which appellees discovered the wrong or that they could not have discovered it sooner. However, the trial amendment, coupled with appellees' live pleadings, clearly alleged that, in the exercise of reasonable diligence, appellees did not discover the wrong until their benefits were terminated. Moreover, appellant failed to object to submission of the question, therefore any alleged error is waived.

Under the discovery rule, a cause of action accrues when the plaintiff discovers the injury and its cause. *Allen v. Roddis Lumber and Veneer Co.*, 796 S.W.2d 758, 760–61 (Tex.App.—Corpus Christi 1990, writ denied). The statute of limitations does not begin to run until the plaintiff discovers the "wrong" or acquires knowledge which, in the exercise of reasonable diligence, would lead to its discovery. *Crean v. Chozick*, 714 S.W.2d 61, 62 (Tex.

App.—San Antonio 1987, writ ref'd n.r.e.). The jury was asked:

> By what date should Donald and/or Carol Abercrombie, in the exercise of reasonable diligence, have discovered the conduct you have found to have been committed by Fort Worth Mortgage Corporation?
>
> Answer with a date in the blank below:
>
> Answer: January 12, 1988.

This is the date that appellees received the letter notifying them of the final payment. Appellant contends there was no evidence or insufficient evidence to support the jury's response. It claims that in November 1979 a letter was mailed to all insured homeowners notifying them of the change. The undated letter, addressed to "Dear Homeowner," stated, *inter alia:*

> Your new group mortgage disability insurance program will pay your monthly benefit up to $400.00 each month if you become totally disabled for more than 30 days as a result of sickness or accident. Your benefits are payable for two years (one year from age 50 to 65).

Included with the letter were a certificate issued by Mortgage Bankers and a new mortgage payment card reflecting a reduced monthly payment. Appellees testified they did not receive the letter, yet Mrs. Abercrombie cited the new group policy number when she wrote for information to file a claim on November 30, 1979. Also, in January 1980, appellees received notice that Mortgage Bankers paid disability benefits under the new policy and copies of the check paying those benefits; in October 1980, Mrs. Abercrombie wrote to Mortgage Bankers asking for a claim form.

■ A presumption that an insured knows the contents of his or her insurance policy can be overcome by proof, as here, that he or she did not know. *See Union Nat'l Bank v. Moriarty,* 746 S.W.2d 249, 250–51 (Tex.App.—Texarkana 1987, writ denied) (citing *Colonial Sav. Assoc. v. Taylor,* 544 S.W.2d 116, 119 (Tex.1976)). Mrs. Abercrombie explained that whenever her husband was injured on the job, she would call appellant: "They have an 800 number, and I would speak to a representative over the telephone and they would tell me the proper procedure to follow to get the claim form and I would do that." She stated that she did not notice that appellant had sent her a Mortgage Bankers claim form, and she assumed the doctor returned the claim form to appellant. Regarding the correspondence appellees received, witnesses for appellant admitted that a change in the name of an insurance company does not necessarily put a homeowner on notice that there is a change in either benefits or policies. We hold that the evidence was sufficient to support the jury's conclusion that appellees would not be expected to discover the policy switch until they received the January 12, 1988 notification. Points of error one, two and three are overruled.

■ Next, appellant challenges the jury's finding that appellant's conduct was false, misleading and/or deceptive, and a producing cause of damages to appellees. The jury's consideration on this issue was limited to the following conduct only:

> 1. causing confusion or misunderstanding as to the source of the disability insurance in question;
>
> 2. representing that the disability insurance agreement in question had sponsorship, approval, characteristics or benefits it does not have; and
>
> 3. representing that the disability insurance policy in question confers or involves rights, remedies or obligations which it does not have or involve.

Appellant contends that it made no representations to appellees, as its only communication regarding the policy switch was the letter that appellees claim they did not receive. According to appellant, some communication or representation to the complaining party is required. However, the Abercrombies respond that appellant misrepresented the benefits of the signed contract, which stated the Abercrombies would receive full mortgage payments for 300 months or until Mr. Abercrombie reached the age of 65. That representation proved untrue once appellant "changed the rules of the game" and the Abercrombies lost benefits that appellant had promised to them in exchange for paying monthly pre-

miums. In addition, the switching of the policies without notice was certainly sufficient to cause "confusion or misunderstanding as to the source of the disability insurance in question," much less alter its "characteristics or benefits" and its "rights, remedies or obligations." We overrule point of error number four.

■ In appellant's fifth point of error, it contends there is no evidence or insufficient evidence to support the jury's finding that it was "unconscionable" for appellant to switch policies and not inform appellees of the switch. The DTPA defines "unconscionable action or course of action" as *either* taking advantage of the consumer to a grossly unfair degree *or* resulting in a gross disparity between the value received and the consideration paid. TEX.BUS. & COM. CODE ANN. § 17.45(5) (Vernon 1986). However, the jury instruction cast a heavier burden on appellees: the instruction defined "unconscionable act" as "an act or practice which, to a person's detriment"

a. takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; *and*

b. results in a gross disparity between the value received and the consideration paid in a transaction involving transfer of consideration. (emphasis added.)

Appellant contends that neither definition applies to its conduct in reducing insurance coverage along with the cost of the premium. Further, to recover damages for unconscionable action, appellant contends there must be evidence showing a shockingly high price paid for little value. Appellant reasons that, because the state regulates the insurance industry, the premium-and-benefits ratio of the substitute policy was state-approved and thus not unreasonable. TEX.INS.CODE ANN. arts. 1.01A and 3.42 (Vernon Supp.1992).

Certainly, appellant took advantage of appellees' lack of knowledge by not properly informing them of the policy switch. Regarding the disparity between the consideration paid and the benefits received, appellees contend that a month's coverage under the policy the Abercrombies purchased cost less than a dime (254 months of coverage divided by monthly premium of $26.11) compared to $1.57–per–month coverage under the substitute policy (12 months of coverage divided by monthly premium of $18.88). While this may not be a case of a shockingly high price being paid for something of little value, it is clear that the jury found a gross disparity between what appellees were led to believe they would receive and the benefits actually paid. Moreover, a year's coverage provided little value for a sheet metal worker subject to permanently disabling injuries on the job. Under these facts, we hold the evidence sufficient to support the jury's finding of unconscionable action. Point of error five is overruled.

■ Appellant also challenges the sufficiency of the evidence to support the jury's finding that appellant's conduct was committed "knowingly." As defined under the DTPA, "knowingly" means "actual awareness of the act or practice giving rise to the consumer's claim ... but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." TEX.BUS. & COM.CODE ANN. § 17.45(9) (Vernon 1987). Although appellant claims it sent a letter to each insured homeowner, including the Abercrombies, the letters were not sent by certified mail, they were distributed by a mailing house which has since gone out of business, they were addressed merely to "Dear Homeowner," and they did not specify the differences between the two policies. In addition, only "those who request to participate in the insurance and who agree to contribute to the premiums" were to be insured under the substitute policy. Appellees did not request to participate, and appellant did not require the appellees' authorization when it canceled their policy or later substituted one with significantly less benefits. Under these circumstances, the jury was entitled to infer appellant's actual awareness. We overrule points of error six and seven.

■ Finally, appellant challenges the sufficiency of the evidence to support the jury's award of $70,275 to compensate appellees for their damages. According to

appellant, the trial court should have deducted from that amount additional premiums payable under the original policy for the seven-year benefits period, and it should have discounted future payments to their present value. *Sheshunoff & Co. v. Scholl,* 564 S.W.2d 697, 698 (Tex.1978); *Taylor Pub. Co. v. Sys. Mktg., Inc.,* 686 S.W.2d 213, 217 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Appellant asks this Court to deduct the premium amounts and to apply a discount at the legal interest rate. However, appellant offered no evidence regarding the discount rate, and it did not request that the jury be instructed to consider a discount rate or the amount appellees would have owed as premiums. The jury was simply instructed to consider what sum of money, *if paid now in cash,* would fairly compensate appellees for "the dollar difference in benefits" between the two policies. Consistent with that instruction, the jury could have considered the growth rate of appellees' mortgage payments, some 22 percent over an eleven-year period, and perhaps offset the amount owed as premiums. Or, more likely, it could have computed the present value by simply adding the undisputed amounts payable under the two policies, with neither the growth rate nor discount rate of either set of figures controlling. In this situation, we cannot say that the jury's approach was erroneous. *See Lucas v. United States,* 807 F.2d 414, 422 (5th Cir.1986). We overrule point of error number eight.

The judgment of the trial court is affirmed.