Crystal **SEGURA, Teri Norton, Sherri Chretien, Janice Kimler, Tessia Innocenti, Angela Christine Maroney, Melissa Whittaker Duran, Tracey Freezia Leudeman, on Behalf of Themselves and All Others Similarly Situated, Appellants**

v.

**ABBOTT LABORATORIES, INC. (Ross Laboratories Division), Bristol–Myers Squibb Company, Mead Johnson & Company, and American Home Products Corporation (Wyeth–Ayerst Laboratories Division), Appellees.**

No. 3–93–319–CV.

Court of Appeals of Texas, Austin.

March 23, 1994.

Rehearing Overruled May 4, 1994.

---

Philip K. Maxwell, Longley & Maxwell, L.L.P., Austin, for appellant.

Brian S. Greig, Fulbright & Jaworski, L.L.P., Austin, for Abbott Laboratories and Ross Laboratories.

Louis P. Bickel, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, for American Home Products Corp. and Wyeth–Ayerst Laboratories.

D.L. (Lin) Hughes, McGinnis, Lochridge & Kilgore, Austin, for Bristol–Myers Squibb Co. and Mead Johnson & Co.

Before POWERS, JONES and KIDD, JJ.

JONES, Justice.

Crystal Segura and others,[1] on behalf of themselves and all others similarly situated ("plaintiffs"), appellants, intervened as plaintiffs in an antitrust suit originally brought by the State of Texas against several defendants. Asserting claims of unconscionable conduct under the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"), Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (West 1987 & Supp.1994), plaintiffs sought damages from Abbott Laboratories, Inc. (Ross Laboratories Division), Bristol–Myers Squibb Company, Mead Johnson & Company, and American Home Products Corporation (Wyeth–Ayerst Laboratories Division) ("defendants"), appellees. The trial court granted summary judgment for defendants, concluding that plaintiffs did not state a cognizable claim under the DTPA and, alternatively, that plaintiffs lacked standing to bring the suit. On appeal, plaintiffs assert that the trial court erred in both conclusions. We will reverse the trial court's judgment and remand the cause.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 1991 the State of Texas brought an antitrust action against defendants Abbott, Bristol–Myers, and Mead Johnson, as well as the American Academy of Pediatrics, alleging a price-fixing conspiracy and monopolization in the sale of infant formula. *See* Texas Free Enterprise and Antitrust Act of 1983 ("Texas Antitrust Act"), Tex.Bus. & Com.Code Ann. §§ 15.01–.52 (West 1987 & Supp.1994). Among other claims, the State sought, on behalf of Texas consumers, injunctive relief and damages for alleged overcharges for infant formula. *See* Texas Antitrust Act § 15.21. In February 1992 the trial court dismissed these claims, concluding that when the Texas Antitrust Act was interpreted in harmony with federal antitrust law, the "indirect purchaser" doctrine deprived the State of standing to sue. *See Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

Three months later, plaintiffs intervened in the action, dropping the American Academy of Pediatrics as a defendant but adding American Home Products. In alleging violations of the DTPA's unconscionability provisions, plaintiffs complained of the same conduct as that on which the State's antitrust

---

1. Other plaintiffs were Teri Norton, Sherri Chretien, Janice Kimler, Tessia Innocenti, Angela Christine Maroney, Melissa Whittaker Duran, and Tracey Freezia Leudeman.

causes of action were based. *See* DTPA § 17.50(a)(3). In response to defendants' special exceptions and plea to the jurisdiction, the trial court determined that plaintiffs had not stated a cognizable cause of action under the DTPA and gave plaintiffs thirty days to amend their pleadings.

Plaintiffs subsequently amended their plea in intervention and petition. Alleging that defendants acted both independently and in conspiracy, plaintiffs summarized their allegations of unconscionable actions as follows:

(A) Creating and maintaining the illusion that their infant formula products are somehow unique and different nutritionally when the infant formula products which they sell are generic formulations which are set and monitored by the U.S. Government;

(B) Creating and maintaining dedicated franchise relationships with physicians and hospitals that endorse the purchasing of a particular brand name product of the Defendants while Texas consumers are kept ignorant of the monies and lavish promotional resources which these physicians and hospitals receive for these endorsements;

(C) Selling their infant formula products at unconscionably high prices to Texas consumers when the costs of such products are very low;

(D) Giving free samples of infant formula products to Texas consumers through their franchise physicians and hospitals during the first months of their newborns' lives thereby creating an endorsement of the products and later grossly overcharging Texas consumers in the retail market for baby formula products;

(E) Using their market dominance to prevent other companies from selling baby formula products to consumers through direct consumer advertising which would inform Texas consumers about the generic nature of these products and permit informed buying decisions based upon price and nutritional information;

(F) Implementing price increases for more than twelve years which were nearly identical and grossly unfair to Texas consumers while giving false and misleading reasons for the price increases;

(G) Taking unfair advantage of Texas consumers to a grossly unfair degree by preventing other sellers of infant formula products from entering the market and introducing competitive, lower prices for these generic foods [sic] products.

Defendants moved for summary judgment on two grounds. First, defendants argued that plaintiffs' claims were not cognizable under the DTPA. Second, defendants argued that plaintiffs lacked standing because: (1) the indirect-purchaser doctrine applies to the Texas Antitrust Act under § 15.04 of that act; (2) the DTPA and the Texas Antitrust Act would be conflicting statutes if one provided a remedy for indirect purchasers while the other did not; and (3) the Texas Antitrust Act should exclusively control, because it is the later-enacted statute, and thus the indirect-purchaser rule deprives plaintiffs of standing to sue under the DTPA.

The trial court granted defendants' motion for summary judgment and dismissed plaintiffs' claims. The court concluded that plaintiffs' claims were not cognizable under the DTPA and, alternatively, that the indirect-purchaser doctrine deprived plaintiffs of standing under the DTPA. Plaintiffs' claims were severed from those remaining in the State's original suit, resulting in the final judgment from which plaintiffs now appeal.

Plaintiffs bring four points of error in this appeal, asserting that the trial court erred in (1) granting defendants' motion for summary judgment, (2) determining that plaintiffs have no standing to pursue their claims, (3) holding that the claims alleged by plaintiffs are not cognizable under the DTPA, and (4) concluding that, to the extent plaintiffs' claims may be cognizable under the DTPA, the DTPA must be harmonized with the direct-purchaser rule applicable to the Texas Antitrust Act, the later-enacted and more specific statute; as indirect purchasers under that statute, plaintiffs lack standing under the DTPA to assert their claims. We will

combine the points of error for purposes of discussion.

## DISCUSSION

### A. Indirect Purchaser Standing Under the DTPA

■ In the present context, a "direct purchaser" is one who purchases goods or services directly from a manufacturer, wholesaler, or other provider who has violated section 4 of the Clayton Act, 15 U.S.C. § 15(a) (1988). An "indirect purchaser" is one who purchases such goods or services from a seller or provider who is down the marketing chain from the antitrust violator. The indirect-purchaser rule of *Illinois Brick* deprives indirect purchasers of standing to sue manufacturers or wholesalers for antitrust violations. As the United States Supreme Court explained, allowing indirect purchasers to recover against antitrust violators would create difficult issues of how much of the monopoly price was "passed on" to the end consumer by the middleman, usually a retailer. *See Illinois Brick*, 431 U.S. at 741–47, 97 S.Ct. at 2072–75.

■ Defendants assert that the indirect-purchaser rule should apply in Texas because the Texas Antitrust Act requires that "[t]he provisions of this Act shall be construed ... in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent consistent with" the purpose of maintaining and promoting economic competition in trade and commerce. Texas Antitrust Act § 15.04. Accordingly, defendants argue that the indirect-purchaser doctrine established in *Illinois Brick* deprives plaintiffs of standing to sue under the DTPA. Reaching this conclusion would require accepting the following propositions: (1) that the indirect-purchaser rule applies to the Texas Antitrust Act to deny indirect purchasers standing under that statute; (2) that,

since plaintiffs allege some claims cognizable under both the Texas Antitrust Act and the DTPA, the two statutes must conflict; and (3) that this conflict must be resolved by concluding that the later-enacted statute, the Texas Antitrust Act, controls, thus depriving plaintiffs of standing under the DTPA. We decline to accept this reasoning. Assuming arguendo that the indirect-purchaser rule applies to the Texas Antitrust Act,[2] we conclude that there is no conflict between that Act and the DTPA.

■ When two statutes conflict irreconcilably, the later-enacted statute controls. *See* Tex.Gov't Code Ann. § 311.025(a) (West 1988). In addition, "where there *is* a positive and clear repugnance between two statutes, courts are enjoined to *harmonize* and give effect to *both* enactments if at all possible by assigning to each a meaning that will *permit both* to stand in harmony." *Commissioners Court of Caldwell County v. Criminal Dist. Attorney, Caldwell County*, 690 S.W.2d 932, 936 (Tex.App.—Austin 1985, writ ref'd n.r.e.) (citing *Duval Corp. v. Sadler*, 407 S.W.2d 493 (Tex.1966); *Standard v. Sadler*, 383 S.W.2d 391 (Tex.1964); and *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550 (1937)); *see also State v. Jackson*, 370 S.W.2d 797, 800 (Tex.Civ.App.—Houston 1963), *aff'd*, 376 S.W.2d 341 (Tex.1964). Courts may not create repugnance by implication. The repugnance between two statutes must be *positive as well as clear from the terms of the statute itself." *Commissioners Court of Caldwell County*, 690 S.W.2d at 936. This rule is based on the assumption that a legislature enacts a statute "with complete knowledge of the existing law and with reference to it." *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex.1990).

Both the Texas Antitrust Act and the DTPA have cumulative-remedies provisions. The Texas Antitrust Act states that "[t]he provisions of this act are cumulative of each

---

**2.** Since we conclude that the indirect-purchaser doctrine does not deprive plaintiffs of standing under the DTPA, we need not and do not determine whether the doctrine actually applies to the Texas Antitrust Act; nor do we determine whether, if the indirect-purchaser doctrine does apply to that Act, it deprives the court of subject matter jurisdiction or is simply a proper ground for

judgment on the merits against the indirect purchaser. *Cf. Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993) (holding that the standing requirement "is implicit in the open courts provision, [Tex. Const. art. I, § 13], which contemplates access to the courts only for those litigants suffering an injury").

other and of any other provision of law of this state in effect relating to the same subject." Texas Antitrust Act § 15.02(a). Similarly, the DTPA states:

> The provisions of this subchapter are not exclusive. The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law; *provided, however, that no recovery shall be permitted under both this subchapter and another law of both actual damages and penalties for the same act or practice. A violation of a provision of law other than this subchapter is not in and of itself a violation of this subchapter. An act or practice that is a violation of a provision of law other than this subchapter may be made the basis of an action under this subchapter if the act or practice is proscribed by a provision of this subchapter ....*

DTPA § 17.43 (emphasis added). The emphasized portions of section 17.43 were added by the legislature in 1979. *See* Act of May 11, 1979, 66th Leg., R.S., ch. 603, § 1, 1979 Tex.Gen.Laws 1327, 1327 (codified as above). The effect of this amendment was to "keep a violation of the DTPA from automatically resulting from the violation of another law and to preclude double recovery under the DTPA and another statute for the same act or practice." *Frizzell v. Cook*, 790 S.W.2d 41, 44 (Tex.App.—San Antonio 1990, writ denied). The existence of cumulative-remedies provisions in the two statutes indicates that the legislature did not, as a general matter, consider the DTPA and the Texas Antitrust Act to be conflicting statutes and did not intend one to supersede or preempt the other.

Other statutory enactments demonstrate that when the legislature wishes to exempt certain defendants or claims from the coverage of the DTPA, it does so in unequivocal terms. Several provisions of other acts have specifically exempted defendants from or limited claims under the DTPA. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 1072, § 1, 1989 Tex.Gen.Laws 4338, 4338 (codified at Tex.Prop.Code Ann. § 27.002 (West Supp. 1994)) (stating in part that "[t]o the extent of conflict between this chapter and any other law, including the Deceptive Trade Practices–Consumer Protection Act ..., this chapter prevails"); Act of June 21, 1987, 70th Leg., R.S., ch. 1122, § 20, 1987 Tex.Gen. Laws 3844, 3851 (codified at Tex.Rev.Civ. Stat.Ann. art. 8890, § 18C (West Supp.1994)) (exempting veterinarians from DTPA claims for malpractice or damages resulting from negligence); Medical Liability and Insurance Improvement Act, 65th Leg., R.S., ch. 817, § 12.01(a), 1977 Tex.Gen.Laws 2039, 2053 (codified at Tex.Rev.Civ.Stat.Ann. art. 4590i, § 12.01(a) (West Supp.1994)) (exempting physicians and health care providers from DTPA claims for damages resulting from death or personal injury caused by negligence). It is also clear that the legislature knows how to make provisions of the Texas Antitrust Act exclusive, as it did with the provisions regarding the enforceability of covenants not to compete. *See* Act of May 29, 1993, 73d Leg., R.S., ch. 965, § 3, 1993 Tex.Gen.Laws 4201, 4201–02 (codified at Texas Antitrust Act § 15.52) (providing that Texas Antitrust Act's new provisions regarding covenants not to compete are "exclusive and preempt any other criteria for enforceability of a covenant not to compete"). Finally, the legislature has created specific exceptions within the DTPA itself. Section 17.49 states that the DTPA does not apply to advertisers and others who run advertisements under certain circumstances, *see* DTPA § 17.49(a), and does not apply to "acts or practices authorized under specific rules or regulations promulgated by the Federal Trade Commission under Section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C. § 45(a)(1)]." DTPA § 17.49(b). Finally, the DTPA's definition of consumer exempts any business consumer that "has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." DTPA § 17.-45(4). *See also* Act of June 14, 1989, 71st Leg., R.S., ch. 380, § 2, 1989 Tex.Gen.Laws 1490, 1491 (codified at DTPA § 17.50(b)(1)) (applying limitations of Tex.Civ.Prac. & Rem. Code chapters 33 & 41 to DTPA claims involving death, personal injury, and damage to property other than goods forming basis of claim).

In light of the legislature's demonstrated ability to voice its intent with unmistakable clarity, defendants' argument that the two statutes conflict is not persuasive. Holding that a conflict exists between the DTPA and the Texas Antitrust Act would create a conflict by implication and would force us to conclude that two statutes "conflict" any time they regulate the same activity. This we will not do. The fact that one statute makes certain conduct actionable while a later statute fails to make it actionable does not create a conflict requiring harmonization of the statutes. Such a holding would also require accepting the proposition that the DTPA is implicitly amended each time the legislature passes a statute that fails to give consumers a cause of action. We do not accept this proposition.

■ This case is not one in which one statute explicitly makes legal certain conduct that another statute makes illegal. *See Jackson*, 370 S.W.2d at 799–800 (holding that where later-enacted statute specifically makes certain conduct legal, regulation promulgated pursuant to earlier-enacted statute could not make that conduct illegal). Nor is it a case of two statutes imposing inconsistent obligations on defendants. *See Texas State Bd. of Pharmacy v. Kittman*, 550 S.W.2d 104, 105–06 (Tex.Civ.App.—Tyler 1977, no writ) (describing earlier-enacted statute's requirement that appeal from board's order must be made within twenty days of order and later-enacted statute's requirement that motion for rehearing must be submitted to board issuing order as prerequisite to appeal).[3]

This conclusion is consistent with the Texas Supreme Court's repeated refusal to recognize exemptions from or exceptions to the DTPA except where clearly mandated by the legislature. Without fail, the supreme court has looked to the plain meaning of the DTPA's provisions and has refused to approve implied exceptions to, or adopt unwarranted limiting constructions of, those provisions. *See, e.g., Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 368 (Tex.1987) (holding that newborn baby was consumer of hospital's services); *Chastain v. Koonce*, 700 S.W.2d 579, 582–83 (Tex.1985) (refusing to require intent or knowledge for defendant to be liable for unconscionable conduct); *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex.1985) (holding that "consumer" can be anyone who acquires goods that provide basis for DTPA complaint even if goods were paid for by someone other than plaintiff); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983) (refusing to require that DTPA plaintiff be in privity with DTPA defendant and concluding that "[t]he only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint"); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540–41 (Tex.1981) (refusing to limit liable defendants to those who actually provided good or service that was basis of DTPA complaint). Such cases are based on two principles: (1) that the DTPA must be construed liberally, and (2) that the legislature expressly limits the DTPA when it so wishes. If the legislature had intended to exclude indirect purchasers from coverage of the DTPA, "it could easily have done so by simply drafting the restriction into the definition of *consumer* or some other provision of the Act." *Cameron*, 618 S.W.2d at 540.

This conclusion is consistent with the decision in *Frizzell v. Cook*, 790 S.W.2d 41 (Tex. App.—San Antonio 1990, writ denied). In *Frizzell*, the plaintiff asserted a DTPA claim involving a broker's failure to properly advise her regarding financial investments. The defendant asserted that the provisions of the Texas Securities Act ("TSA"),[4] which establish a cause of action for misrepresentation in connection with a securities transaction, preempted the plaintiff's DTPA claim. *Id.* at

---

**3.** It is important to note that the indirect-purchaser doctrine is *not* founded on the principle that the antitrust defendant's conduct is legal under the antitrust laws. Rather, it is founded on the principle that indirect purchasers are not the proper parties to seek enforcement of those laws. *See Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 203–04, 110 S.Ct. 2807, 2810–11, 111 L.Ed.2d 169 (1990). Thus the DTPA and the Texas Antitrust Act do not regulate defendants' conduct in an inconsistent manner.

**4.** Tex.Rev.Civ.Stat.Ann. art. 581–1 to 581–41 (West 1964 & Supp.1994).

42. Since the TSA did not have a provision exempting any conduct from the DTPA, the court looked to section 17.49 of the DTPA and concluded: "The only exemptions intended by the Legislature are those delineated in section 17.49, which *do not* exempt securities transactions." *Frizzell,* 790 S.W.2d at 44.

Based on the absence of an express exemption in either the DTPA or the Texas Antitrust Act, combined with the presumption against finding statutes to be in conflict by implication, we decline to hold that the indirect-purchaser rule applies to the DTPA.

## B. Plaintiffs' Cause of Action for Unconscionability

■ The trial court also based its summary judgment on the ground that plaintiffs had not stated a claim for unconscionable conduct under DTPA § 17.50(a)(3). We will, therefore, review the trial court's decision to grant defendants' motion for summary judgment directed solely at plaintiffs' pleadings.

■ In reviewing a summary judgment granted on the pleadings, we must consider the allegations in the pleadings in the light most favorable to the non-movant.[5] We must accept as true every allegation of the pleadings against which the motion is directed. *Trunkline LNG Co. v. Trane Thermal Co.,* 722 S.W.2d 722, 724 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Labbe v. Carr,* 369 S.W.2d 952, 954 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.). If the pleadings, when liberally construed, are sufficient to show a material fact issue, the motion must be overruled. *Abbott v. City of Kaufman,* 717 S.W.2d 927, 929 (Tex.App.—Tyler 1986, writ dism'd). Moreover, all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the opposing party is entitled to the benefit of every reasonable infer-

ence that can properly be drawn in its favor. *Id.* Taking all of plaintiffs' allegations as true, we must consider whether the acts alleged support a cause of action for unconscionability under the DTPA.

■ Section 17.50(a)(3) of the DTPA provides that a consumer may maintain a cause of action where "any unconscionable action or course of action by any person" constitutes a producing cause of actual damages. Section 17.45(5) contains two alternative definitions of "unconscionable":

"Unconscionable action or course of action" means an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

DTPA § 17.45(5). These two acts are the only means of engaging in an unconscionable action or course of action under the DTPA. *Griffith v. Porter,* 817 S.W.2d 131, 136 (Tex. App.—Tyler 1991, no writ).

■ In *Chastain,* the supreme court interpreted the term "gross" as meaning "glaringly noticeable, flagrant, complete and unmitigated." 700 S.W.2d at 583. Thus, plaintiffs must allege either (1) that defendants' course of conduct took advantage of plaintiffs' lack of knowledge, ability, experience, or capacity to a glaringly noticeable, flagrant, complete and unmitigated degree; or (2) that the disparity between the value and the price of the infant formula was glaringly noticeable, flagrant, complete and unmitigated.[6]

### 1. Gross Price Disparity

Plaintiffs allege that defendants overcharged infant formula consumers to the ex-

---

5. Even then, such a summary judgment generally can be granted only after the non-movant has had an opportunity to amend his pleadings after special exceptions have been sustained. *See Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9–10 (Tex.1974). In the present case, the trial court followed this procedure.

6. The supreme court did not give much guidance as to whether these four terms should be construed in the conjunctive (i.e. glaringly noticeable, flagrant, complete, *and* unmitigated) or dis-

junctive (i.e. glaringly noticeable, or flagrant, *or* complete and unmitigated). Although the court's phrase contains the term "and," this usage is not conclusive, because the court quoted *Webster's Third New International Dictionary* 1002 (1976) for its definition of the term "gross." The fact that the court relied on a dictionary definition supports the argument that the phrase should be read in the disjunctive, since dictionaries often list several synonyms for a word when they define it. We believe there is a large difference between, for example, a price disparity that is

tent that a gross disparity existed between the value given and the value received. The court in *Chastain* stated that "[a] slight disparity between the consideration paid and the value received is not unconscionable; a glaring and flagrant disparity is." 700 S.W.2d at 583. The disparity between value and price must be determined at the time of the transaction. *Id.* at 582.

Plaintiffs specifically alleged that defendants "have abused their overwhelming market dominance and, by direct action and by a conspiracy among them, have grossly overcharged Texas consumers." Plaintiffs further alleged that defendants coordinated their price increases, and they specifically set forth the following example of disparity in pricing: "The average wholesale cost for a can of Similac 13 ounce concentrate increased from $.54 in 1978 to $1.73 in August, 1990. During the same period, total manufacturing costs for that product increased from just 20 cents a can to 32 cents a can."

Construing these allegations in the light most favorable to plaintiffs, we believe plaintiffs have alleged a gross disparity between the price charged and the value received.[7] For example, plaintiffs allege that the price of Similac in 1990 was over five times its cost.[8] This disparity could certainly be considered more than "slight."

We do not accept defendants' argument that the gross-disparity cases reflect a rule that unconscionability exists *only* where there is a price charged for something of little or no value. *See Wyatt v. Petrila*, 752

S.W.2d 683, 686 (Tex.App.—Corpus Christi 1988, writ denied) ("In reviewing other decisions in which the evidence supporting gross disparity was discussed, we find that in each the value received was none or nearly so."). It is important to note that simply because courts have found liability in such cases does not inexorably lead to the conclusion that liability cannot exist in less severe cases, and nothing in the definition of unconscionability supports the "little or no value" test as the exclusive test of gross disparity. For example, the supreme court recently stated that an allegation of unconscionability based on a price paid of $10,000 for equipment worth $2,000 was supportable. *See Kinerd v. Colonial Leasing Co.*, 800 S.W.2d 187, 191 (Tex. 1990); *see also Fort Worth Mortgage Corp. v. Abercrombie*, 835 S.W.2d 262, 266 (Tex. App.—Houston [14th Dist.] 1992, no writ) (holding that, although "a case of a shockingly high price being paid for something of little value" did not exist, "it is clear that the jury found a gross disparity between what appellees were led to believe they would receive and the benefits actually paid").

Plaintiffs' pleadings set forth claims of prices up to five times the alleged value of the product purchased. Mindful of our duty to construe the pleadings in the light most favorable to plaintiffs, we hold that plaintiffs have alleged a cognizable gross-disparity claim.

## 2. Taking Advantage of Plaintiffs to a Grossly Unfair Degree

Plaintiffs also alleged that defendants took advantage of their lack of knowledge and

---

"glaringly noticeable" or "flagrant" and one that is "complete and unmitigated." However, because we find that plaintiffs' allegations are sufficient under either construction, we do not decide this issue.

7. Determining value is not a simple task. Plaintiffs apparently assume that the wholesale cost per can of the infant formula is the "value" of the formula. Although this may or may not be true, defendants did not present summary judgment evidence to the contrary. Thus, reading the pleadings in the light most favorable to plaintiffs, for purposes of evaluating the pleadings' sufficiency, we assume that the wholesale cost per can is the "value" per can.

8. We do not hold that a mere price disparity alone, even a large one, is enough to meet the test of unconscionability. Rather, to be glaringly

noticeable, flagrant, complete, and unmitigated, it may well be that there must be a gross price disparity "plus" some type of culpable conduct. *See, e.g., LaChalet Int'l, Inc. v. Nowik*, 787 S.W.2d 101, 105–06 (Tex.App.—Dallas 1990, no writ) (disparity in price and value received accompanied by several misrepresentations); *Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926, 931–32 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (gross disparity between price paid and value received caused by defendant's selling of goods to someone else and then refusing to return the money). In this case, plaintiffs have alleged that defendants conspired to raise prices and to prevent direct advertising and forestall market entry. Such allegations are enough to satisfy a "price disparity plus" standard.

capacity to a grossly unfair degree. They allege in their petition that defendants, separately and in conspiracy, sought to ban direct advertising of infant formula in order to maintain high prices and prevent market entry; sought to maintain a system in which pediatricians, nurses, and hospitals recommended infant formula with the objective of maintaining high prices; and strove to create the false impression that their products were unique when in fact the contents of infant formula are regulated by the federal government and are essentially identical.

In *Chastain*, the court stated that although unfairness is a "more nebulous term than disparity, ... this is not a reason to create a new definition for 'gross.'" 700 S.W.2d at 583. Thus, the same standard of "glaringly noticeable, flagrant, complete and unmitigated" applies. Further, there is no requirement that the unconscionable conduct take place at the exact time of the sale of the infant formula; rather, we must examine the entire transaction. *See id.* at 583; *Flenniken*, 661 S.W.2d at 707.

As already noted, this case is before us on the pleadings and is in an embryonic stage of factual development. Plaintiffs' pleadings are occasionally somewhat conclusory, and the true facts as later developed may or may not bear them out. For example, the success of claims regarding physicians' and hospitals' use of defendants' products in efforts to encourage plaintiffs to buy and use the products may depend a great deal on the degree of influence the physicians had over plaintiffs and the degree of knowledge the average consumer possesses regarding infant formula. Similarly, the viability of claims regarding the generic nature of infant formulas may depend on the factual issues of what the ingredients were, what specific efforts defendants made to create an "impression of uniqueness," and the plaintiffs' capacity to distinguish among the formulas. However, in light of our obligation to construe the pleadings in the light most favorable to plaintiffs, we hold that the allegations are sufficient to state a claim that defendants took advantage of plaintiffs' lack of knowledge and capacity to a degree that was glaringly noticeable, flagrant, complete and unmitigated.

Plaintiffs alleged a course of conduct in which defendants conspired among themselves and with others to keep material information from consumers like plaintiffs by preventing direct advertising, by creating certain misimpressions, and by relying on a network of physicians, nurses, and hospitals to refer plaintiffs to a certain infant formula. We hold that these claims are sufficiently alleged, especially in light of the early stage of factual development of this case.

## CONCLUSION

There is no clear indication that the legislature intended in any way to limit the DTPA's coverage in the antitrust area. The legislature's failure either to amend the DTPA to exempt antitrust-type claims or to state explicitly that the Texas Antitrust Act preempts other statutory enactments is significant in light of the legislature's proven ability to express itself clearly. Plaintiffs' pleadings, taken in the light most favorable to them, are sufficient to state causes of action for unconscionable price disparity and taking advantage of plaintiffs' lack of capacity, knowledge, and experience to a grossly unfair degree. We therefore sustain plaintiffs' four points of error. We reverse the trial court's summary judgment and remand the cause for further proceedings.